WOODWORTH *et al.*, *Appellants*, v. McLEAN *et al.*

1. **Contract:** INTERPRETATION. Defendant stipulated to sink a mining shaft five hundred feet "on the vein of ore cropping out on said claim." If, in the progress of the work, all indications of valuable material ceased and the vein of ore ran out entirely, there was no obligation on him to proceed further.

2. ———— : ———— : BURDEN OF PROOF. When, in a suit for damages on account of a failure to execute such contract, it is proved that the work stopped within the five hundred feet, the burden of proof rests on defendant to show that the vein of ore, along which the shaft was to proceed, had terminated.

3. ——— : ———: MEASURE OF DAMAGES. The measure of damages for failing to continue such a mining excavation to the point fixed by contract is the reasonable price or value of the work necessary to complete the agreed depth. But this rule does not apply in this case unless the vein of mineral continued to the point where defendant ceased work.

*Appeal from St. Louis City Circuit Court.*—HON. A. M. THAYER, Judge.

REVERSED AND REMANDED.

*Boyle, Adams & McKeighan* and *John A. Harrison* for appellants.

(1) Where a party has agreed to perform certain work for a consideration paid and the thing to be done (as in this instance the shaft to be sunk) has no certain or ascertainable value, the measure of damages is the cost of doing the thing contracted to be done. *Carli v. Seymour*, 26 Minn. 276; *Frost v. Fair*, 53 Ind. 390; *Roberts v. Cole*, 82 N. C. 293; *Fisher v. Goebel*, 40 Mo. 475; *Ellison v. Dore*, 8 Black. (Ind.) 571; *Gantz v. Clark*, 31 Iowa, 254; *Pell v. Shearman*, 10 Ex. H. & G. 766; *Railroad v. Johnston*, 101 Pa. St. 555. (2) The obligation of a party to a contract is exactly equal to his promise. If his promise is absolute his obligation is absolute. If he desires to qualify or limit his obligation he must qualify and limit his promise in precisely the same respect and extent. *Chooe District v. Daneby*, 25 Conn. 530; Pollock on Cont. 349; Chitty on Cont. 1070-1076. If a party by his contract charge himself with an obligation to be performed, he must make it good unless its performance is rendered impossible by the act of God, the law, or the other party. Unforeseen difficulties, however great, will not excuse him. *Fruin v. Railroad*, 89 Mo 397, 407.

*Fisher & Rowell* for respondents.

(1) The instruction given by the court and its

ruling upon the testimony based upon the theory that the purpose for which the work was undertaken was shown to have been fully accomplished, is a proper construction of the contract sued upon, and issues presented. *Pond v. Wyman*, 15 Mo. 176 ; *Lewis v. Ins. Co.*, 61 Mo. 534; *Chamberlin v. Parker*, 45 N. Y. 569; *Cook v. Andrews*, 36 Ohio St. 174 ; 2 Suth. on Dam. 479 ; *Gribbin v. Atkinson*, 7 West. Rep. 867 ; *Ray v. Hodge*, 15 Ore. 20 ; *Pell v. Shearman*, 10 Exch. 766. (2) Conceding, for the sake of the argument, that this contract was, as claimed by appellants, an absolute, unconditional undertaking to sink the shaft to a depth of five hundred feet, yet appellants, not having completed the work, are not entitled, as the measure of damages, to the estimated cost of completing the same. *Manville v. Parks*, 2 Col. 128 ; 2 Suth. Dam. 481, 485 ; Leake on Cont. 1044; *Railroad v. Wray*, 52 Ind. 578; *Railroad v. Lurton*, 72 Mo. 118; *Fisher v. Gould*, 40 Mo 475 ; *Middlekaup v. Smith*, 1 Md. 327; *Myers v. Burn*, 35 N. Y. 269. (3) There was no breach of the contract, consequently plaintiffs were not entitled to judgment for even nominal damages. (*a*) Interpretation of contract. *Nash v. Town*, 5 Wall. 699 ; *Railroad v. Bowns*, 58 N. Y. 573; *Hovey v. Pitcher*, 13 Mo. 192 ; *Schutze v. Bailey*, 40 Mo. 69 ; *Ehrlich v. Ins. Co.*, 88 Mo. 255. (*b*) Discharge and performance. *Walker v. Tucker*, 71 Ill. 527; *Muhlenburg v. Honning*, 116 Penn. St. 138; *Gribben v. Atkinson*, 7 West. Rep. 867 ; *Cook v. Andrews*, 36 Ohio St. 174 ; *Brick Co. v. Pond*, 38 Ohio St. 65 ; *Ray v. Hodge*, 15 Ore. 20 ; *Clifford v. Watts* L. R. 5 C. P. 577.

BARCLAY, J.—Plaintiffs brought their action against McLean to recover $30,000 damages for breach of a written contract regarding certain mining operations. Since the judgment in the circuit court, the defendant McLean died. The present defendants are his legal representatives.

Plaintiffs were owners of a mining claim in New Mexico and conveyed to McLean two-thirds of it as a consideration for the contract in question. It was intended by its terms to secure the development of the claim. It provided that McLean, at his own expense, should cause a shaft to be sunk to "the depth of five hundred feet *on the vein of ore* cropping out on said claim," within two years from December 28, 1882. It required the shaft to be at least five by seven feet, with cross-cuts every hundred feet, and contained many details of agreement not necessary to repeat.

The plaintiffs' evidence at the trial tended to show that McLean sunk the shaft, as agreed, to a depth of 330 feet, but refused to carry it further.

There was evidence for defendant to the effect that the work was stopped at that point because the vein of mineral had given out entirely.

The instructions which the court gave the jury, regarding the points of vital difference between the parties, are as follows, viz. :

"3.   The court instructs you that it stands admitted that the contract sued upon was executed by the defendant, and that the shaft agreed to be sunk was only sunk to a depth of 330 feet. You will accordingly find a general verdict for the plaintiffs and the measure of plaintiffs' damages is such sum as you believe from all the evidence it would cost the plaintiffs to sink the shaft in question ( with cross-cuts every one hundred feet ) from the level of 330 feet to the depth of five hundred feet as specified in the contract. And in estimating such cost you will make allowance for the necessary expense of procuring and setting up at the mine the necessary machinery for doing the work, deducting from such cost of machinery what you believe from the evidence such machinery would be reasonbly worth, at the mine, when the shaft was completed.

"4.   The foregoing rule as to the measure of damages is subject, however, to this qualification, namely :

if, from the testimony in the case, you believe and find
that the sinking of the shaft in question to the depth of
five hundred feet would not have led to the develop-
ment or discovery of any valuable deposits of gold or
silver, or other valuable mineral in paying quantities,
and would not have benefited the plaintiffs to any
greater extent than they were already benefited by
sinking the shaft to the depth of 330 feet, then you may
assess the plaintiffs' damages at a mere nominal sum.

"5.   The burden of showing that the sinking of the
shaft to the depth of five hundred feet, with cross-cuts
each one hundred feet, would not have led to the develop-
ment or discovery of any valuable mineral deposits, and
would not have benefited the plaintiffs, rests upon
the defendant, and he must show such fact to your
reasonable satisfaction.   But in determining that issue
the court instructs the jury that they may take into con-
sideration the opinions of the various experts who have
testified on that subject, and all of the facts and circum-
stances given in evidence upon which the opinions of
such experts or any of them were based."

Plaintiffs preserved exceptions to these declarations
of law.

There was evidence sufficient to support the
instructions (leaving out of view the question of the
construction of the contract).   Some special issues were
submitted to the jury, but they need not be discussed.

There was a finding for plaintiffs for nominal dam-
ages, from which they have appealed.

Plaintiffs regard this contract as obliging McLean
to sink the shaft five hundred feet in any event, irre-
spective of all intermediate developments.   Their entire
argument here rests on that assumption.   We think the
language of the agreement does not reasonably bear that
interpretation.   Its intent and purpose were to secure
a development of the claim in a manner to "subserve
the mutual interests of the parties," and, on the comple-
tion of the work, two-thirds of the shaft (as part of

the entire claim ) was to belong to McLean.    The latter stipulated to sink the shaft five hundred feet "*on the vein of ore*, cropping out on said claim." If, in the progress of the work, all indications of valuable mineral ceased and the vein of ore ran out entirely, there was on obligation on McLean to proceed further.    The question whether the vein of ore had ceased is one of fact to be tried in the usual way.    As the work stopped within the five hundred feet, the burden of proof rested on him to show that the vein of ore ( along which the shaft was to proceed) had terminated, for the contract itself asserts the existence of the vein at the beginning.    But on establishing that fact the requirements of the contract would be met and there would be no breach whatever.

The measure of damages for failing to continue a mining excavation, such as this, to the point fixed by contract is the reasonable price, or value of the work necessary to complete the shaft to the agreed depth. But this rule is not applicable, in view of the language and evident purpose of the contract here considered, unless the vein of mineral continued to the point where McLean ceased work.

The instructions given in the circuit court were based on the premise that the contract required the shaft to be sunk five hundred feet in any event.    In the main they were, perhaps, more favorable to the plaintiffs' claim than the views we have expressed.    But plaintiffs are entitled to have the case correctly tried.    The evidence preserved in the record is not sufficiently satisfactory ( in its bearing on the decisive issue of fact above indicated ) to justify an affirmance on the theory that plaintiffs were not prejudiced by the error of the trial court in the construction of the contract.    Accordingly, it will be ordered that the judgment be reversed and the cause remanded unless plaintiffs, during the present

term, dismiss their appeal, which they may do if so advised. All the judges concur.

[The plaintiffs having elected not to dismiss their appeal, the judgment was accordingly reversed and cause remanded.]